UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

James Ward,                                      Case No. 3:18-cv-2687

           Plaintiff,

v.                                                       MEMORANDUM OPINION
                                                            AND ORDER

Lt. Terence Brown, *et al.*,

           Defendants.

### I. INTRODUCTION

Defendants Lt. Terrence Brown, Emmanuel Higgins, Antonio Stanford, Kyle Seevers, Aaron Logan, Lt. Biederman, Mark Bigler, M.D., Kent Wallace, and Russell Hamilton have filed a motion for summary judgment on all claims asserted by Plaintiff James Ward. (Doc. No. 46). For the reasons stated below, I grant Defendants' motion.

### II. BACKGROUND

James Ward is an inmate at the Toledo Correctional Institution ("ToCI") in Toledo, Ohio. Each of the Defendants was employed by the Ohio Department of Rehabilitation and Correction ("ODRC") at ToCI in June 2018. Higgins, Stanford, Seevers, Logan, Wallace, and Hamilton were employed as Corrections Officers at the time, while Brown and Biederman had supervisory duties in addition to their roles as Corrections Officers. (Doc. No. 33 at 1-2). Dr. Bigler provided medical services to inmates at ToCI. (*Id.* at 2).

In June 2018, Ward was housed in a single cell in the segregation unit at ToCI. (Doc. No. 45-1 at 7). Ward was moved to the segregation unit a few months before, after attempting to use a razor blade to cut the officer who was performing a periodic check-in because Ward was on suicide watch. (*Id.* at 8).

On June 14, 2018, Ward was in his cell with the window on his cell door covered and a bed sheet hanging for the top bunk so he couldn't be seen while lying on the bottom bunk. (*Id.* at 9-10). Ward has "a long history of mental [health] issues" and would periodically cover his window and bunk for privacy so he could clear his thoughts. (*Id.*). Ward was aware both of these things violated institutional rules but, according to Ward, officers would permit inmates to do this to gain some privacy so long as the inmate answered an officer who came around to check on the inmate. (*Id.*). When an officer came by and attempted to make contact, however, Ward did not respond. (*See* Doc. No. 46-5; Doc. No. 48, Ex. A). Ward later contended he did not hear the officer because he was listening to his radio through his ear buds. (Doc. No. 45-1 at 12).

After Ward failed to answer, officers opened the cuff-port in the main cell door and removed the window covering, revealing the bed sheet draped over the bottom bunk. When Ward did not respond to the officers' repeated directions to come to the door, officers planned a use-of-force extraction due to Ward's history of self-harm. (*See* Doc. No. 46-4 at 10). Pursuant to department policy, the cell extraction was recorded on video. (*See* Doc. No. 48).

Lt. Brown first sprayed o/c spray into the cell through the cuff-port before Officers Stanford, Seevers, Higgins, Snowberger,[1] and Logan entered the cell with tactical equipment. (Doc. No. 45-1 at 13-16; Doc. No. 46-4 at 1-3; Doc. No. 48, Ex. B at 2:08). The officers asserted Ward was combative once they entered his cell, including by holding onto the frame of his bunk as they tried to lift him off the bed, but they eventually were able to secure him on the floor of the cell.

---

[1] Ward previously dismissed his claims against Snowberger. (*See* Doc. No. 31).

(Doc. No. 46-4 at 1-2); (*see also* Doc. No. 48, Ex. C, 00:22-2:05). Ward claims he pulled the bed sheet back and asked what was going on once Brown sprayed the o/c spray. (Doc. No. 45-1 at 16). He disputes Defendants' assertion that he was combative, testifying during his deposition that he "didn't try to fight anything," and that the officers hit him without provocation. (*Id.* at 16-17). Ward suffered an abrasion to his forehead, a small puncture wound to the inside of his mouth, and a dislocated left shoulder. (Doc. No. 46-4 at 60). He then was transported to the hospital for treatment on his shoulder. (Doc. No. 45-1 at 19-20). Ward indicated he previously had had surgery on his shoulder and had dislocated it approximately five times prior to this incident. (*Id.* at 18-19).

Ward was searched when he returned from the hospital, first when he re-entered the institution and again when he returned to the segregation unit. (*Id.* at 23-27). Ward asserts Biederman required him to remove his sling during the second search and that this caused his shoulder to dislocate again. (*Id.*). Ward returned to the hospital to have his shoulder reset but, the following day, it became dislocated a third time. (*Id.* at 27-30). Medical staff at ToCI were able to assist Ward without sending him back to the hospital.

Ward also alleges that, on June 16, 2018, he was again sprayed with o/c spray and assaulted by Officers Wallace, Stanford, and Hamilton. (Doc. No. 33 at 4). Ward did not elaborate on these allegations during his deposition, (Doc. No. 45-1 at 36-37), and Defendants assert there is no record of Ward ever filing a grievance about this alleged incident. (Doc. No. 46 at 10-11).

Ward, proceeding *pro se*, filed suit on November 19, 2018. (Doc. No. 1). I subsequently granted Ward's motion for appointment of counsel, (Doc. No. 15), and counsel entered an appearance on Ward's behalf on March 19, 2019. (Doc. No. 17). Ward later filed his First Amended Complaint, asserting claims for deliberate indifference to his serious medical needs and excessive use of force in violation of the Eighth Amendment. (Doc. No. 33).

### III. STANDARD

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

### IV. ANALYSIS

Defendants seek summary judgment on all of Ward's claims. (Doc. No. 46). Ward did not respond to Defendants' arguments despite having been served with a copy of their motion in a manner consistent with the Federal Rules of Civil Procedure. Therefore, I deem Ward to have waived opposition to Defendants' summary judgment motion. *See, e.g., Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 566 (6th Cir. 2017) (citing *Humphrey v. United States Att'y Gen.'s Office*, 279 F. App'x 328 (6th Cir. 2008)); *Scott v. Tennessee*, 878 F.2d 382, *2 (6th Cir. 1989) (unpublished table decision).

#### A. EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act requires inmates like Ward to exhaust all available administrative remedies before filing a civil rights lawsuit in federal court. 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.") (citation omitted). It is a

defendant's burden to prove, by a preponderance of the evidence, that the plaintiff failed to exhaust the plaintiff's administrative remedies. *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015).

Defendants have submitted a declaration from Michael Jenkins, the Institutional Inspector overseeing the grievance process at ToCI. (Doc. No. 46-8). Jenkins states Ward did not file a grievance related to the "alleged denial of medical care related to an injury incurred by him on or about June 14, 2018 within the fourteen (14) day time allotment," or "regarding after treatment/care of the injury sustained on or about June 14, 2018 . . . ." (*Id.* at 2). Therefore, Defendants argue, I should dismiss Ward's claims against (a) Biederman, Higgins, and Bigler for deliberate indifference; and (b) Wallace, Hamilton, and Stanford for excessive use of force on June 16. (Doc. No. 46 at 14).

As I noted above, Ward has waived opposition to Defendants' motion by failing to respond to that motion. In the absence of any countervailing evidence, I conclude Defendants have carried their burden of proving Ward failed to exhaust his administrative remedies and I dismiss his deliberate indifference claims against Biederman, Higgins, Bigler, and his excessive use of force claims against Wallace, Hamilton, and Stanford arising out of the purported June 16 incident. *See Bell v. Konteh*, 450 F.3d 651, 653 n.4 (6th Cir. 2006) ("It is well established . . . the appropriate disposition of an unexhausted claim under the PLRA is dismissal without prejudice.").

### B. WARD'S REMAINING EXCESSIVE FORCE CLAIMS

Defendants also contend they are entitled to summary judgment on Ward's claims against Brown, Higgins, Seevers, Logan, and Stanford for excessive use of force on June 14 because those claims fail on their merits. (Doc. No. 46 at 22-23).

The Eighth Amendment prohibits the use of excessive force against inmates held in a correctional facility. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). An inmate who brings an excessive use of force claim must show the officer "acted with a sufficiently culpable state of mind, and the alleged wrongdoing must be objectively harmful enough to establish a constitutional violation, [and]

5

that the defendant acted 'maliciously and sadistically for the very purpose of causing harm,' rather than 'in a good faith effort to maintain or restore discipline.'" *Richmond v. Settles*, 450 F. App'x 448, 453 (6th Cir. 2011) (quoting *Hudson*, 503 U.S. at 6).

The record evidence demonstrates a reasonable jury could not conclude Brown, Higgins, Seevers, Stanford, and Logan acted maliciously and sadistically for the very purpose of causing harm. Ward acknowledges he violated institutional rules by covering his window and bunk, and by failing to respond when officers attempted to get his attention. (Doc. No. 45-1 at 9-11). While Ward claims he was unable to hear to officers because he was listening to his radio, (*id.* at 12), Defendants produced video evidence which demonstrates they made multiple attempts to make contact with Ward before entering his cell. (Doc. No. 48, Exs. A and B).

After Ward failed to respond, Defendants decided to enter Ward's cell due to his history of self-harm. (Doc. No. 46-4 at 10). For his part, Ward acknowledged he has attempted to harm himself "many times." (Doc. No. 45-1 at 11). The Sixth Circuit previously has held that corrections officers did not violate an inmate's Eighth Amendment rights by using o/c spray to maintain or restore discipline after the inmate failed to obey repeated direct orders prior to the use of the spray. *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004).

While it is undisputed that Ward suffered a serious injury during the cell extraction, the extent of his injury alone does not demonstrate Defendants used excessive force, as Ward had a pre-existing injury to that shoulder. Ward does not allege Defendants specifically targeted his shoulder and the record evidence demonstrates the force Defendants used was commensurate with Ward's behavior. (Doc. No. 48, Ex. C at 00:22 – 2:05); (*see also* Doc. No. 46-4).

Therefore, I conclude Defendants have demonstrated the absence of a genuine dispute of material fact upon which a reasonable jury could find in Ward's favor and grant their motion for summary judgment on Ward's excessive force claims.

6

## V.     CONCLUSION

For the reasons stated above, I grant Defendants' motion for summary judgment, (Doc. No. 46), and enter judgment in their favor on each of the claims asserted by Plaintiff James Ward.

So Ordered.

s/ Jeffrey J. Helmick<br>
United States District Judge